IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| BALTIMORE COUNTY, MARYLAND, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. RDB-15-0089 |
| BUCK CONSULTANTS, LLC, | * | |
| Defendant. | * | |

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

## MEMORANDUM OPINION

Plaintiff Baltimore County, Maryland ("Plaintiff" or "the County") has brought this action against Defendant Buck Consultants, LLC ("Defendant" or "Buck") seeking 1) a Declaratory Judgment, pursuant to 28 U.S.C. § 2201, that Defendant "has a contractual duty to defend, indemnify and hold harmless the Plaintiff" in a separate civil action also pending in this Court[1] and 2) "an Order requiring the Defendant to defend, indemnify and hold harmless the Plaintiff in the underlying litigation." First Am. Compl. at ¶ 1, 31, ECF No. 15. Currently pending before this Court is Defendant's Motion to Dismiss (ECF No. 19). The parties' submissions have been reviewed, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2014). For the reasons set forth herein, Defendant's Motion to Dismiss (ECF No.

---

[1] The County is a defendant in *EEOC v. Baltimore County, et al.,* RDB-07-2500, an enforcement action brought by the United States Equal Employment Opportunity Commission ("EEOC") against the County, pursuant to Section 7(b) of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 626(b). In that case, the EEOC alleged that the County required older individuals "to pay higher contributions than those paid by younger individuals in [the County's] pension plan, in violation of Sections 4(a)(1) and 4(i)(1) of the [ADEA], 29 U.S.C. § 623(a)(1), (i)(1)." Am. Compl. at ¶ 14, ECF No. 57. This Court has granted summary judgment in favor of the EEOC in that action on the issue of liability. *See* Mem. Op., p. 9, ECF No. 196. The United States Court of Appeals for the Fourth Circuit has since affirmed that decision and remanded the case to this Court for consideration of damages. USCA Judgment, p. 2, ECF No. 210. The ultimate resolution of the damages remains pending in that case.

19) is GRANTED IN PART and DENIED IN PART.  Specifically, it is GRANTED with respect to Plaintiff's request for a Declaratory Judgment and Order requiring Buck to "*indemnify and hold harmless* the Plaintiff."   As explained *infra*, the Age Discrimination in Employment Act preempts a claim for indemnification.   Accordingly, that claim is DISMISSED.   However, Defendant's Motion to Dismiss is DENIED with respect to Plaintiff's request for a Declaratory Judgment and Order requiring Buck to "*defend* . . . the Plaintiff" during the damages phase of the EEOC lawsuit, in accordance with their contractual agreement. [2]  That claim survives Defendant's Motion to Dismiss.

## BACKGROUND

In ruling on a motion to dismiss, this Court must accept the factual allegations in the plaintiff's complaint as true and construe those facts in the light most favorable to the plaintiff. *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011).  The relevant facts of this case, construed in Plaintiff's favor, are as follows.

Since the creation of Baltimore County's ("Plaintiff" or "the County") Employees' Retirement System ("ERS") in 1945, Buck Consultants, LLC ("Defendant" or "Buck") has served as its principal actuarial consulting firm.  First Am. Compl. at ¶ 6, ECF No. 15.  On July 1, 1999, the County entered into a contract for actuarial services for the ERS with Buck's predecessor, Buck Consultants, Inc.  *Id.* at 13.  That contract provided the following:

> The Contractor shall indemnify and hold harmless the County, its employees,
> agents and officials from any and all claims, suits, or demands including

---

[2] The County contends that the pending Motion to Dismiss should not be construed as a Motion to Dismiss the County's request for a Declaratory Judgment and Order requiring Buck to "*defend*" the County in the "damages phase" of the EEOC lawsuit.  Pl. Response, p. 37, ECF No. 22.  However, the pending motion specifically requests dismissal of the County's claim "seeking indemnification *and defense*."  Mem. Supp. Mot. to Dismiss, p. 1, ECF No. 19-1 (emphasis added).  Therefore, the pending Motion is construed as a Motion to Dismiss the First Amended Complaint in its entirety.

attorney fees which may be made against the County, its employees, agents or officials resulting from any act or omission committed in the performance of the duties imposed by and performed under the terms of this Agreement by the Contractor or anyone under agreement with the Contractor to perform duties under this Agreement. The Contractor shall not be responsible for acts of gross negligence or willful misconduct committed by the County. *Id.*

On June 19, 2006, the County and Buck entered into an additional contract for actuarial services primarily for the ERS. *Id.* at 14. That contract provided the following:

The Contractor shall defend, indemnify and hold harmless the County, its employees, agents and officials from any and all liabilities, claims, suits, or demands including attorney fees which may be incurred or made against the County, its employees, agents or officials resulting from any act or omission committed in the performance of the duties imposed by and performed under the terms of this Agreement by the Contractor or anyone under agreement with the Contractor to perform duties under this Agreement. The Contractor shall not be responsible for acts of gross negligence or willful misconduct committed by the County . . . Contractor shall provide defense for County, its employees, agents and in accordance with this Article 14 and in doing so Contractor shall allow County to participate in said defense of County, its employees, agents and officials, to the extent and as may be required by the County and the Contractor shall cooperate with County in all aspects in connection therewith. *Id.*

In the 1999 contract, Buck's services were defined to include "interpretations of the benefit provisions of the Retirement Code, advice as to the implication of federal legislation, and advice on legal implementations of proposed legislation. . . ." *Id.* at 16. Additionally, the bid request underlying the 2006 contract, which was incorporated into that contract, stated that Buck would "provide actuarial consultation and advisory services on any technical, policy, legal or administrative problems arising during the course of operations" and "keep [the County] advised on developments in federal legislation and regulations regarding financing, benefits, vesting, fiduciary responsibility, disclosure, etc." *Id.* at 18.

3

Over the past seventy years that Buck has been an actuarial consultant for the County, Buck has "provided advice as to the legality of various aspects of the ERS." *Id.* at 19. "[W]hen the County agreed to provide the 20 year early retirement option to correctional officers this change in the ERS was specifically reviewed and approved by Buck as in conformance with all applicable laws." *Id.*

In 1999 and 2000, two correctional officers employed by the County filed charges of age discrimination against the County. *Id.* at 6. The United States Equal Employment Opportunity Commission ("EEOC") began an investigation and, on March 6, 2006, determined that the County "had committed age discrimination." *Id.* at 6-7. Subsequently, the EEOC commenced an action captioned *EEOC v. Baltimore County, et al.*, L-07-2500[3], alleging that the County required older individuals "to pay higher contributions than those paid by younger individuals to [the County's] pension plan, in violation of Sections 4(a)(1) and 4(i)(1) of the [ADEA], 29 U.S.C. § 623(a)(1), (i)(1)." Am. Compl. at ¶ 14, ECF No. 57.

In the early stages of this litigation, the County claims that it asked Buck to review the ERS a second time and to explain to the EEOC why it was in compliance with the ADEA. First Am. Compl. at ¶ 20, ECF No. 15. Via letter dated August 16, 2000, Buck provided "actuarial and legal advice, maintaining its position that these provisions of the ERS were lawful." *Id.* In that letter, Buck communicated its "understanding that a bona-fide employee benefit plan does not discriminate against older employees, even if older employees must pay more for their benefit, so long as older employees do not have to bear a greater percentage

---

[3] The EEOC action was initially assigned to Judge Benson Legg of this Court, but was reassigned to Judge Richard Bennett on February 7, 2013 and re-captioned *EEOC v. Baltimore County, et al.*, RDB-07-2500.

of the cost of the benefit than a younger employee." *Id.* at Ex. C.[4]   The County alleges it reasonably relied on Buck's "advice" in retaining the early retirement option of the ERS and maintaining that the ERS was in compliance with the ADEA throughout the EEOC litigation. *Id.* at ¶ 21.

Via Order dated January 21, 2009, Judge Legg of this Court granted summary judgment for the County in the EEOC action. *See* Order, ECF No. 101.   However, the United States Court of Appeals for the Fourth Circuit subsequently vacated Judge Legg's Order and remanded the case to this Court to determine whether, as a matter of law, the County's ERS contribution rates relied on age or were "justified by permissible financial considerations." *See* USCA Judgment, p. 7-8, ECF No. 109.   On remand, Judge Legg found that age was the "but for" cause of disparate treatment under the ERS, ruled that "the ERS violate[d] the ADEA," and granted summary judgment in favor of the EEOC on the issue of liability. *See* Mem. Op., p. 9, ECF No. 196.   The United States Court of Appeals for the Fourth Circuit has since affirmed that decision and remanded the case to this Court for consideration of damages.   USCA Judgment, p. 2, ECF No. 210.

The County now alleges that "Buck breached its duty to provide competent actuarial and legal advice by failing to use due care when first reviewing and approving the early

---

[4] A court may consider documents attached to a defendant's motion to dismiss if that document "was integral to and explicitly relied on in the complaint and if the plaintiff[ ] do[es] not challenge its authenticity." *Pasternak & Fidis, P.C. v. Recall Total Information Mgmt., Inc.*, 95 F. Supp. 3d 886, 894 (D. Md. 2015).   Defendant has appended a letter to its Motion to Dismiss, dated August 24, 1999, sent from Buck to the County to provide a review of recent changes in the Internal Revenue Code that could possibly impact the operation of the ERS.   Mot. to Dismiss, Ex. 5, ECF No. 19.   In that 1999 letter, contrary to Plaintiff's representations, Buck reiterated its "concern that a disgruntled employee could argue that the [ERS] discriminates on the basis of age." *Id.*   Buck explained the possible issues with the ERS, and then offered available options regarding changes to the ERS in order to ensure it remained fully compliant with the ADEA. *Id.*   Since the First Amended Complaint explicitly relies on advice provided to the County by Buck regarding the legality of the ERS, this letter is properly considered in disposing of the pending motion.

retirement revisions to the ERS, and then by affirmatively advising the County at the beginning of and throughout the pending litigation that these ERS revisions were in compliance with the ADEA." First Am. Compl. at 23, ECF No. 15. As a direct and proximate result of these breaches, the County claims it "has been found to be liable and is now subject to civil damages." *Id.* at 24.

Shortly after the underlying suit was initiated by the EEOC, the County claims that "Buck's counsel took the position that Buck was not obligated to defend, indemnify or hold the County harmless in the pending litigation." *Id.* at 27. However, Buck subsequently proposed that Buck and the County "work collaboratively with the goal of having the County prevail in the lawsuit." *Id.* at 28. Buck and the County worked collaboratively until this Court granted summary judgment in favor of the EEOC on the issue of liability. *Id.* at 29. The County claims it has once again called on Buck to defend, indemnify and hold harmless the County in collection with the damages phase, but that Buck has refused. *Id.* at 30. Therefore, the County now requests, *inter alia*, that this Court "stay the underlying litigation until the Court has made its declaration in this case," "render a declaratory judgment in Plaintiff's favor, [pursuant to 28 U.S.C. § 2201,] declaring that [Buck] is obligated to defend, indemnify and hold harmless the [County] in the underlying litigation," and "enter an Order requiring [Buck] to defend, indemnify and hold harmless the [County] in the underlying litigation." *Id.* at 31.

## STANDARD OF REVIEW

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.

R. Civ. P. 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Supreme Court's opinions in *Bell Atlantic Corp v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). In *Twombly*, the Supreme Court articulated "working principles" that courts must employ when ruling on Rule 12(b)(6) motions to dismiss. *Iqbal*, 556 U.S. at 678. While a court must accept as true all the factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference. *Id.* (stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim). The court need not accept unsupported legal allegations, *see Revene v. Charles County Commissioners*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

## ANALYSIS

Defendant raises four arguments in support of its Motion to Dismiss. First, Defendant contends that the County's claim "seeking indemnification and defense" is preempted by the ADEA itself, a "comprehensive federal remedial statute that provides no

7

express or implied right of indemnification." Mem. Supp. Mot. to Dismiss, p. 1, ECF No. 19-1. Second, Defendant argues that "to the extent the County's claim is based on Buck's alleged approval in 1973 of an amendment to the County's pension plan, the indemnity provisions, which are prospective in nature and appear in agreements entered into in 1999 and 2006, are not implicated." *Id.* Third, Defendant claims that "those [1999 and 2006] agreements cannot reasonably be construed, as the County alleges, to obligate Buck, an actuarial firm, to provide legal advice to the County." *Id.* at 1-2. Fourth, Defendant contends that the First Amended Complaint does not sufficiently allege that Buck advised the County that the ERS complied with the ADEA." *Id.* at 2.

I.    **The County's Request for a Declaratory Judgment and Order Requiring Buck to "Indemnify and Hold Harmless" the County is Preempted by the Age Discrimination in Employment Act**

Defendant argues that "[t]he County's claim for contractual indemnification should be dismissed under the doctrine of obstacle preemption." Mem. Supp. Mot. to Dismiss, p. 10, ECF No. 19-1. Buck posits that "[t]he Fourth Circuit and its district courts have consistently rejected a party's claim for indemnification arising out of that party's violation of a comprehensive federal remedial statute where the statute does not itself provide for indemnity." *Id.* For the following reasons, the County's request for an Order requiring that Buck "indemnify and hold harmless" the County  is preempted by the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, *et seq.*

The United States Court of Appeals for the Fourth Circuit has not specifically addressed the question of whether a claim for indemnification of an ADEA violation is preempted.  However, the Fourth Circuit held in *Baker, Watts & Co. v. Miles & Stockbridge,*

876 F.2d 1101, 1106-08 (4th Cir. 1989) that a claim for indemnification of a violation of

Section 12(2) of the Securities Act of 1933, 15 U.S.C. § 77l(2), was preempted by federal

securities law.   The Plaintiff in that case, Baker, Watts, hired the law firm of Miles &

Stockbridge to provide legal services in connection with a private offering of limited

partnership interests. *Baker, Watts*, 876 F.2d at 1102-03.  About two years after the offering

period closed, a federal jury found Baker, Watts to be in violation of Section 12(2) of the

Securities Act of 1933.  *Id.* at 1103.  Subsequently, Baker, Watts brought suit against Miles &

Stockbridge in this Court, "asserting rights to indemnification and contribution under federal

and state securities law." *Id.*  However, this Court ruled that "the 1933 Act does not provide

for indemnification," *Watts & Co. v. Miles & Stockbridge*, 690 F. Supp. 431, 434 (D. Md.

1988), and the Fourth Circuit affirmed the ruling on that point, *see id.* at 1108.  The Fourth

Circuit reasoned as follows:

> Congress has not provided a right to indemnification in the federal securities
> laws under any circumstances. [citing *Heizer Corp. v. Ross*, 601 F.2d 330, 333-34
> (7th Cir. 1979)].  The legislative histories of the 1933 and 1934 Acts are silent
> as to the existence of any such remedy. *See* L. Loss, Fundamentals of Securities
> Regulation 1035–36 (2d ed. 1988). Moreover, it would run counter to the basic
> policy of the federal securities laws to allow a securities wrongdoer such as
> Baker, Watts to shift its entire responsibility for federal violations on the basis
> of a collateral state action for indemnification. *See Globus v. Law Research Service,
> Inc.*, 418 F.2d 1276, 1288 (2d Cir. 1969).  Although a right to indemnification
> may not be preempted in each and every circumstance, we reject plaintiff's
> assertion that the federal policy against indemnification extends only to
> intentional wrongdoing. The goal of the 1933 and 1934 Acts is preventive as
> well as remedial, [citing *Laventhol, Krekstein, Horwath & Horwath v. Horwitch*, 637
> F.2d 672, 676 (9th Cir. 1980)], and "[d]enying indemnification encourages the
> reasonable care required by the federal securities provisions." [citing *In re
> Olympia Brewing Co. Sec. Litig.*, 674 F. Supp. 597, 611 (N.D. Ill. 1987)].  Here,
> plaintiff's wrongdoing has been plainly adjudicated, and a state action for

indemnification would frustrate the basic enforcement of federal securities law. Plaintiff's § 11–703 claim for indemnification is therefore preempted and should be dismissed with prejudice. *Id.* at 1108.

Additionally, the Fourth Circuit held in *Lyle v. Food Lion, Inc.*, 954 F.2d 984, 987 (4th Cir. 1992) that an employer's claim for indemnification of its own violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, was preempted by the FLSA.  In that case, a meat market manager and meat wrapper, employed by Food Lion, Inc., brought suit against Food Lion in a United States District Court seeking unpaid overtime compensation, liquidated damages, attorney fees, and costs under the FLSA.  *Lyle*, 954 F.2d at 986.  Food Lion responded with claims against the meat market manager for breach of contractual and fiduciary duties and sought indemnity against the manager for any liability to the meat wrapper.  *Id.*  The district court dismissed Food Lion's claims, and the Fourth Circuit affirmed that ruling.  *Id.* at 987.  The Fourth Circuit observed that Food Lion was attempting "to indemnify itself . . . for its own violation of the FLSA, . . . something the FLSA simply will not allow."  *Id.*  The Court concluded that " '[t]o engraft an indemnity action upon this otherwise comprehensive federal statute would run afoul of the Supremacy Clause of the Constitution' and 'would undermine employers' incentives to abide by the Act.' "  *Id.* (quoting *LeCompte v. Chrysler Credit Corp.*, 780 F.2d 1260, 1264 (5th Cir. 1986)).

Furthermore, the Fourth Circuit held in *Equal Rights Ctr. v. Niles Bolton Associates*, 602 F.3d 597, 602 (4th Cir. 2010) that indemnity claims for violations of the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601 *et seq.*, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.,* were preempted.  In *Niles Bolton*, a developer entered into a Consent Decree with Plaintiff Equal Rights Center to settle a lawsuit alleging that 71 of the

developer's properties were inaccessible to persons with disabilities, in violation of the FHA

and ADA. *Id.* at 599. "Under the settlement, Archstone was required, *inter alia*, to retrofit

the 71 properties to make them compliant with the FHA and ADA and pay the plaintiffs

$1.4 million to cover damages, attorneys' fees, and expenses." *Id.* Subsequently, the

developer sued its architect, Niles Bolton, for indemnification. *Id.* However, a United States

District Court dismissed the developer's claim, and the Fourth Circuit affirmed. *Id.* at 602.

The Fourth Circuit, relying on its decision in *Baker, Watts*, reasoned as follows:

> If a developer of apartment housing, who concededly has a non-delegable
> duty to comply with the ADA and FHA, can be indemnified under state law
> for its ADA and FHA violations, then the developer will not be accountable
> for discriminatory practices in building apartment housing. Such a result is
> antithetical to the purposes of the FHA and ADA. Accordingly, we find
> Archstone's indemnification claims are preempted. *Id.*

This Court held in *E.E.O.C. v. Blockbuster Inc.*, No. RWT-07-2612, 2010 WL 290952,

at *3-4 (D. Md. Jan. 14, 2010) that an indemnity claim for a violation of Title VII of the Civil

Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e to 2000e–17, was preempted. In

*Blockbuster*, the EEOC brought suit against Defendant Blockbuster, alleging violations of

Title VII by Blockbuster management personnel at Blockbuster's Gaithersburg, Maryland

warehouse facility. *Blockbuster*, 2010 WL 290952 at *1. In response, Blockbuster filed a

third-party complaint against Venturi, an outside organization that had allegedly provided

contractors to Blockbuster's Gaithersburg facility. *Id.* Blockbuster claimed that if it were to

be found liable, "then pursuant to the contractual relationship among the parties, Venturi is

liable for indemnification to Blockbuster for any liability on its part to the EEOC." *Id.*

However, this Court, citing the cases outlined *supra*, held that Blockbuster could not seek

indemnification. *Id.* at *3-4. This Court reasoned as follows:

11

In light of these decisions disfavoring indemnification claims for violations of
the federal Securities Act of 1933, the FHA, and the ADA, the Court
concludes that Blockbuster's claims for indemnification for violations of Title
VII are similarly barred. The Supreme Court has held that "[t]he language of
Title VII makes plain the purpose of Congress to assure equality of
employment opportunities and to eliminate those discriminatory practices and
devices which have fostered racially stratified job environments to the
disadvantage of minority citizens." *McDonnell Douglas Corp. v. Green*, 411 U.S.
792, 800 [] (1973). The primary goal of Title VII to eradicate discriminatory
conduct would be thwarted if Blockbuster were permitted to contract around
its obligations and shift its entire responsibility for complying with Title VII.
[citation omitted] Blockbuster therefore cannot seek contractual
indemnification from Venturi or any other entity. *Id.*

Like Section 12(2) of the Securities Act of 1933, the Fair Labor Standards Act, the

Americans with Disabilities Act, the Fair Housing Act, and Title VII, nothing in the Age

Discrimination in Employment Act provides a right of indemnity. The parties do not

dispute this fact. Additionally, like the FLSA, the ADA, the FHA, and Title VII, the ADEA

provides a "comprehensive remedial framework" for combatting discrimination. *See, e.g.,*

*Zombro v. Baltimore City Police Dep't*, 868 F.2d 1364, 1368 (4th Cir. 1989). Courts routinely look

to Title VII specifically in interpreting the ADEA. *See, e.g., McKennon v. Nashville Banner Pub.*

*Co.*, 513 U.S. 352, 358 (1995) ("The ADEA and Title VII share common substantive features

and also a common purpose: 'the elimination of discrimination in the workplace' . . .

Congress designed the remedial measures in these statutes to serve as a 'spur or catalyst' to

cause employers 'to self-examine and to self-evaluate their employment practices and to

endeavor to eliminate, so far as possible, the last vestiges' of discrimination." (citations

omitted)); *Hague v. Spencer Turbine Co.*, No. C-81-254-WS, 1982 WL 204, at *3 (M.D.N.C.

12

Mar. 10, 1982) ("[B]ecause of the close similarity in purposes and procedures between Title VII and the ADEA, the Court may look to cases arising under Title VII for guidance.").

Furthermore, the United States District Court for the District of Minnesota held in *E.E.O.C. v. Indep. Sch. Dist. No. 2174 of Pine River, Minn.*, No. 04-4087 (RHK/RLE), 2005 WL 1325104, at *10 (D. Minn. June 1, 2005) that a school district's claim for indemnification and contribution, in the event it was found to have violated the ADEA, was preempted. In that case, the EEOC commenced lawsuits against ten school districts for violations of the ADEA "based upon early retirement incentive plans ("ERIP") that are contained in those School Districts' collective bargaining agreements ("CBAs")." *Indep. Sch. Dist. No. 2174*, 2005 WL 1325104, at *1. In response, the school districts filed third-party complaints against their respective "Education Associations." *Id.* The complaints alleged "that the Education Associations, as participants in the negotiation of the CBAs at issue, [were] obligated, under principles of contribution and/or indemnity, to share in the payment of any damages if the pertinent CBA [was] found to violate the ADEA." *Id.* However, the Minnesota Court concluded that "as a matter of law, the School Districts do not have a right of contribution against the Education Associations under the ADEA" and recommended dismissal of the third-party complaints. In *Overlie v. Owatonna Independent School District No. 761*, 341 F. Supp. 2d 1081 (D. Minn. 2004), an earlier case in the District of Minnesota, the Court reached the same conclusion:

> The result reached, in *Overlie*, considered the statutory language of the ADEA, the absence of any pertinent legislative history, the purpose and structure of the ADEA, and the principles of Federal common law. Moreover, the Court analyzed the closest Supreme Court precedents, arising from both *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111 (1985), and *Northwest Airlines, Inc. v. Transp. Workers Union of Am.*, 451 U.S. 77 (1981), where the Court analyzed the

analogous provisions of the Equal Pay Act, and Title VII, and concluded that there is no right to contribution, by an employer.

*Indep. Sch. Dist. No. 2174*, 2005 WL 1325104, at *9.

The County argues that the cases cited *supra* are distinguishable from the facts of this case because, unlike the parties seeking indemnification in those cases, the County is not a "wrongful participant" and "has no culpability for the ADEA violation in this case." Pl. Response, p. 23, ECF No. 22.  The County cites *Fromer v. Yogel*, 50 F. Supp. 2d 227 (S.D.N.Y. 1999) and *Delay v. Rosenthal Collins Grp., LLC*, 585 F.3d 1003 (6th Cir. 2009) for the proposition that indemnification is not preempted where the party seeking indemnification is not a "wrongdoer."  However, the parties seeking indemnification in both of those cases had never been adjudged to have violated federal law.  Here, this Court has granted summary judgment in favor of the EEOC on the issue of liability in the EEOC's action against the County for violation of the ADEA.  *See* First Am. Compl. at ¶ 11, ECF No. 15; *EEOC v. Baltimore Cty, et al.*, No. L-07-2500, 2012 WL 5077631, at *1 (D. Md. Oct. 17, 2012) *aff'd sub nom. E.E.O.C. v. Baltimore Cty.*, 747 F.3d 267 (4th Cir. 2014)[5].  Furthermore, the United States Court of Appeals for the Seventh Circuit "has suggested that indemnity is unavailable even to a party without fault."  *See Fromer*, 50 F. Supp. 2d at 238 n. 8 (citing *King v. Gibbs*, 876 F.2d 1275, 1282 n. 10 (7th Cir. 1989) ("It is difficult to see how a right to indemnification for even innocent persons would serve the deterrent function which underlies [federal securities law]. Those innocent parties who would qualify for indemnification, because they lack the scienter required by the rule, *Ernst & Ernst v.*

---

[5] The EEOC action was subsequently reassigned to Judge Richard Bennett and re-captioned *EEOC v. Baltimore Cty, et al.*, No. RDB-07-2500.

*Hochfelder*, 425 U.S. 185 (1976), cannot be found liable for damages. Thus, a right to indemnification would have no affect [(sic)] on their conduct and would not serve the deterrent function of the statute.")).

For these reasons, Defendant's Motion to Dismiss (ECF No. 19) is GRANTED with respect to Plaintiff's request for a Declaratory Judgment and Order requiring Buck to "*indemnify and hold harmless* the Plaintiff." Accordingly, that claim is DISMISSED. However, Defendant's preemption argument fails with respect to Plaintiff's request for a Declaratory Judgment and Order requiring Buck to "*defend* . . . the Plaintiff" in accordance with their contractual agreement.[6]  Defendant cites no case for the proposition that "defense" is preempted by the ADEA. In a footnote in its Reply brief, Defendant argues that "in discussing . . . *Equal Rights Ctr.* . . . Buck explained how in that case both the claim for indemnification and for a defense were found to be preempted." Def. Reply, p. 13, n. 11, ECF No. 23. However, the Fourth Circuit in *Equal Rights Ctr. v. Niles Bolton* held only that "*indemnification* state law claims by Archstone are pre-empted under federal law." *Niles Bolton*, 602 F.3d at 602 (emphasis added). Therefore, Defendant's preemption argument fails with respect to Plaintiff's request for a Declaratory Judgment and Order requiring Buck to "*defend*" the County during the damages phase of the EEOC action.

---

[6] As stated *supra*, the pending Motion is construed as a Motion to Dismiss the First Amended Complaint in its entirety.

II.     **Plaintiff Has Sufficiently Alleged "Act[s] or Omission[s]" By Buck that
        Obligate Buck to Defend the County Under the Terms of the 1999 and 2006
        Agreements**

Defendant argues that "to the extent the County's claim is based on Buck's alleged

approval in 1973 of an amendment to the County's pension plan, the indemnity and defense

provisions, which are prospective in nature and appear in agreements entered into in 1999

and 2006, are not implicated."  Mem. Supp. Mot. to Dismiss, p. 1, ECF No. 19-1.  The

indemnification provision of the 1999 agreement and the indemnification and defense

provision of the 2006 agreement provide that Buck has an obligation to indemnify and

defend the County where liability or other harm suffered by the County "result[s] from" an

"act or omission" by Buck "committed in the performance of [its] duties imposed by and

performed under th[e] [Agreements] . . . ." First Am. Compl. Ex. A at ¶ 14, Ex. B at ¶ 14.

While the County does rely, in part, on Buck's alleged "review[] and approv[al]" of

the 20 year early retirement option when it went into effect in the 1970s, First Am. Compl.

at ¶ 19, ECF No. 15, the County also alleges specific "act[s] or omission[s]" by Buck since

the 1999 and 2006 agreements went into effect.  The County alleges that Buck indicated via

letter its "understanding that a bona-fide employee benefit plan does not discriminate against

older employees, even if older employees must pay more for their benefit, so long as older

employees do not have to bear a greater percentage of the cost of the benefit than a younger

employee."  *Id.* at Ex. C.  The County alleges it reasonably relied on Buck's "advice" in

retaining the early retirement option of the ERS and maintaining that the ERS was in

compliance with the ADEA throughout the EEOC litigation, which commenced in 2007.

*Id.* at ¶ 21.  The County further alleges that Buck advised the County "throughout the

pending litigation [2007 through the present] that these ERS revisions were in compliance with the ADEA." *Id.* at ¶ 23. Therefore, pursuant to the terms of the 1999 and 2006 agreements, the County contends that Buck has "breached its duty to provide competent actuarial and legal advice" and is now "obligated to defend, indemnify and hold harmless the County." *Id.* at ¶ 23, 25. These allegations are sufficient to state a claim that Defendant is obligated to defend the County in the upcoming damages phase of the EEOC litigation. Accordingly, Defendant's second argument for dismissal fails.

### III.   Plaintiff Has Sufficiently Alleged that Buck Had A Duty to Advise the County Regarding the ERS's Compliance with the ADEA

Defendant contends that the 1999 and 2006 agreements did not impose upon Buck a duty to provide the County legal advice. Mem. Supp. Mot. to Dismiss, p. 16, ECF No. 19-1. Therefore, Defendant argues, to the extent the present action is based on Buck's alleged legal advice to the County that the 20 year retirement option was in accordance with the ADEA, it must be dismissed.

In the 1999 contract, Buck's services were defined to include "interpretations of the benefit provisions of the Retirement Code, advice as to the implication of federal legislation, and advice on legal implementations of proposed legislation. . . ." *Id.* at 16. Additionally, the bid request underlying the 2006 contract, which was incorporated into that contract, stated that Buck would "provide actuarial consultation and advisory services on any technical, policy, legal or administrative problems arising during the course of operations" and "keep [the County] advised on developments in federal legislation and regulations regarding financing, benefits, vesting, fiduciary responsibility, disclosure, etc." *Id.* at 18.

Since the plain language of the agreements indicates that Buck had an obligation to advise on "the implication of federal legislation," "legal implementations of proposed legislation," and on "federal legislation and regulations" and to provide "advisory services" on "legal" problems, Plaintiff has sufficiently alleged that Buck had a duty to inform the County of the ERS's compliance with the ADEA. Therefore, Defendant's third argument for dismissal fails.

## IV.   Plaintiff Has Sufficiently Alleged that Buck Advised the County that the ERS Complied with the ADEA

Defendant argues that Plaintiff fails to set forth a plausible claim that Buck advised the County that the ERS was in compliance with the ADEA. Mem. Supp. Mot. to Dismiss, p. 16, ECF No. 19-1.   However, Plaintiff alleges in the First Amended Complaint that "when the County agreed to provide the 20 year early retirement option to correctional officers this change in the ERS was specifically reviewed and approved by Buck as in conformance with all applicable laws." First Am. Compl. at ¶ 19, ECF No. 15.   Additionally, Plaintiff has alleged that via letter dated August 16, 2000[7], Buck provided "actuarial and legal advice, maintaining its position that these provisions of the ERS were lawful." *Id.*   In that letter, Buck communicated its "understanding that a bona-fide employee benefit plan does

---

[7] Defendant has appended a letter to its Motion to Dismiss, dated August 24, 1999, sent from Buck to the County to provide a review of recent changes in the Internal Revenue Code that could possibly impact the operation of the ERS. Mot. to Dismiss, Ex. 5, ECF No. 19. As stated *supra*, this Court has considered the letter in ruling on the pending Motion. In that 1999 letter, contrary to Plaintiff's representations, Buck reiterated its "concern that a disgruntled employee could argue that the [ERS] discriminates on the basis of age." *Id.*  Buck explained the possible issues with the ERS, and then offered available options regarding changes to the ERS in order to ensure it remained fully compliant with the ADEA. *Id.*  While this letter may create a factual dispute as to whether or not the weight of Buck's advice suggested that the ERS was in compliance with the ADEA, it does not defeat Plaintiff's otherwise well-pled allegations. *See Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.").

not discriminate against older employees, even if older employees must pay more for their benefit, so long as older employees do not have to bear a greater percentage of the cost of the benefit than a younger employee." *Id.* at Ex. C.   Finally, the County alleges that Buck affirmatively advised the County "throughout the pending litigation that these ERS revisions were in compliance with the ADEA." *Id.* at ¶ 23.  The County alleges it reasonably relied on Buck's "advice" in retaining the early retirement option of the ERS and maintaining that the ERS was in compliance with the ADEA throughout the EEOC litigation.  *Id.* at ¶ 21. Therefore, Plaintiff has sufficiently alleged that Buck advised the County that the ERS complied with the ADEA, and Defendant's final argument for dismissal fails.  Accordingly, Defendant's Motion to Dismiss (ECF No. 19) is DENIED with respect to Plaintiff's request for a Declaratory Judgment and Order requiring Buck to "*defend . . .* the Plaintiff" during the damages phase of the EEOC lawsuit, in accordance with their contractual agreement.  That claim survives Defendant's Motion to Dismiss.

## **CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss (ECF No. 19) is GRANTED IN PART and DENIED IN PART.  Specifically, it is GRANTED with respect to Plaintiff's request for a Declaratory Judgment and Order requiring Buck to "*indemnify and hold harmless* the Plaintiff."  As explained *supra*, the Age Discrimination in Employment Act preempts a claim for indemnification.  Accordingly, that claim is DISMISSED.  However, Defendant's Motion to Dismiss is DENIED with respect to Plaintiff's request for a Declaratory Judgment and Order requiring Buck to "*defend . . .* the Plaintiff" during the

damages phase of the EEOC lawsuit, in accordance with their contractual agreement.  That claim survives Defendant's Motion to Dismiss.

A separate Order follows.

Dated:        March 29, 2016

                                                        _____/s/_____
                                                        Richard D. Bennett
                                                        United States District Judge